UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED SABRA, as next friend of Baby M., <br><br> *Plaintiff,* <br><br> v. <br><br> MICHAEL POMPEO, in his official capacity as Secretary of the United States Department of State, <br><br> *Defendant.* | Civil Action No. 19-2090 (EGS) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S COMBINED [1] MOTION TO DISMISS THE ADMINISTRATIVE PROCEDURE ACT CLAIM IN PLAINTIFF'S AMENDED COMPLAINT, [2] MOTION FOR RECONSIDERATION OF THE COURT'S DETERMINATION THAT PLAINTIFF MET HIS INITIAL BURDEN ON HIS RELIGIOUS FREEDOM RESTORATION ACT CLAIM, AND [3] RENEWED MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S RELIGIOUS FREEDOM RESTORATION ACT CLAIM**

Defendant Michael Pompeo, in his official capacity as Secretary of State ("Defendant" or "the Department"), respectfully submits this memorandum of points and authorities in reply to Plaintiff's opposition to Defendant's combined: (i) motion to dismiss the Administrative Procedure Act ("APA") claim in Plaintiff's Amended Complaint; (ii) motion for reconsideration of the Court's determination that Plaintiff met his initial burden on his Religious Freedom Restoration Act ("RFRA") claim; and (iii) renewed motion for summary judgment on Plaintiff's RFRA claim ("Combined Motion").

## INTRODUCTION

As discussed in Defendant's Combined Motion, Plaintiff Mohammed Sabra, on behalf of his infant daughter, Baby M., seeks an order declaring that Baby M. is the biological child of U.S. citizens Mr. and Ms. Sabra, and thus eligible for U.S. citizenship and entitled to the rights and

privileges of U.S. citizenship by birth. But this Court has already determined that Mr. Sabra "has failed to provide satisfactory proof of Baby M.'s birth, identity, and citizenship to establish her entitlement to a [Consular Report of Birth Abroad] and passport under the applicable statutes and regulations." ECF No. 59 ("Mem. Op.") at 30.

Now, Plaintiff has amended his complaint to seek, for the first time, relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, arguing that Defendant's denials of Plaintiff's applications for a Consular Report of Birth Abroad ("CRBA") and passport for Baby M. were arbitrary and capricious. Defendant has argued that this claim should not advance past the pleading stage for two reasons.

First, Defendant has argued that Plaintiff fails to state a claim upon which relief may be granted because the Immigration and Nationality Act ("INA") provides an adequate other remedy in the form of specific procedures—culminating in judicial review—for Baby M. to try to establish her citizenship. *See* 78-1, Public Redacted Version of Memorandum of Points and Authorities in Support of Defendant's Combined Motion ("Def's Mem.") at 23-29.[1]  Because there exists an adequate, alternative remedy to the relief sought through the APA, Defendant argues that Plaintiff may not proceed under the APA, and must challenge the Department of State's decisions under the appropriate review provision of the INA.  *Id.*  In his Opposition, Plaintiff incorrectly argues that "controlling law in this District" has rejected Defendant's argument.  ECF No. 92 ("Pl's Opp.") at 13.  But Plaintiff mistakes *persuasive* authority from other judges of this District Court for *controlling* authority.  Defendant disclosed in his Combined Motion all adverse persuasive authorities addressed by Plaintiff in his Opposition, explained why they are distinguishable, and

---

[1]     All page numbers cited refer to the pagination of the ECF headers on the versions of briefs filed on the docket.

argued why the Court should instead adopt the reasoning of another persuasive authority from the Fifth Circuit.

Second, Defendant argued that the Court has already determined that the record before the Embassy and the Court contained numerous "inconsistencies that support the Embassy's final decision that Mr. and Ms. Sabra's submissions are insufficient proof of Baby M.'s birth, identity, and citizenship," Mem. Op. at 68-71, and that "Mr. Sabra has failed to provide sufficient documentation as proof of Baby M.'s birth, identity and citizenship, as required by the applicable statutes and regulations." Mem. Op. at 70.  Plaintiff has not moved for reconsideration of the Court's ruling, and yet now seeks essentially to re-litigate this same issue, under a standard (arbitrary and capricious review) that is even more deferential to the government.  *See* Def's Mem. at 29-32.  Plaintiff cannot dispute that the Court's earlier ruling would be wholly inconsistent with a finding that Defendant's denials of the CRBA and passport applications were arbitrary and capricious.  *Id*.  The Court should therefore adopt its prior reasoning and, in the interest of judicial economy, should dismiss Plaintiff's APA claim for failure to state a claim or, in the alternative, grant summary judgment to Defendant based on the record already before the Court on the parties' first cross motions for summary judgment in this case.  *Id*.

Plaintiff also claims that the Department's failure to issue a passport and CRBA constitutes a violation of Plaintiff's rights to free exercise of religion under the Religious Freedom Restoration Act.  The Court has previously found that Plaintiff met his initial burden to establish a *prima facie* violation under RFRA.  Mem. Op. at 71-86.  Defendant, however, respectfully moved for reconsideration of this decision.  *See* Def's Mem. at 32-34.  As a matter of law, Defendant's request that Plaintiff provide additional evidence in support of Baby M.'s identity and the Sabra's relationship to Baby M.—which could include, but was not *required* to include, photos of Ms.

Sabra pregnant or a DNA test—did not place a substantial burden on Plaintiff's religious exercise. *Id*.

Defendant has argued in the alternative that even if the Court denies Defendant's request for reconsideration and maintains its finding that the Department has imposed a substantial burden on Plaintiff's religion, Defendant is still entitled to summary judgment in its favor regarding Plaintiff's RFRA claim. Def's Mem. at 34-42. The Department's CRBA and passport application processes serve compelling governmental interests in: (1) ensuring that U.S. citizenship documentation is obtained only by those entitled to it, and (2) defending against international child abduction, illegal adoption, and child trafficking efforts. *Id*. The Department's processes are the least restrictive means of accomplishing those interests—it requested any evidence that the Sabra's could provide to establish their relationship with Baby M. Indeed, there is no less restrictive means possible. *Id*. The Court should therefore grant Defendant's Combined Motion and enter judgment for Defendant.

## ARGUMENT

I.   **Plaintiff's APA Claim Should be Dismissed for Failure to State a Claim or, in the Alternative, Summary Judgment Should be Entered for Defendant**

A.   **Plaintiff may not invoke the APA to sidestep the process set forth in § 1503(b) and (c)**

As Defendant argued and as the Fifth Circuit has definitively held, Sections 1503(b) and (c) provide an adequate remedy by which persons abroad may challenge the alleged denial of a right of citizenship, thereby precluding review under the APA. *See* Def's Mem. at 23-29; *Hinojosa v. Horn*, 896 F.3d 305 (5th Cir. 2018). In his argument to the contrary, Plaintiff mischaracterizes a *persuasive* adverse decision from another D.C. District Court Judge in *Chacoty v. Pompeo*, 392 F. Supp. 3d 1 (D.D.C. 2019), as "[c]ontrolling law in this District." Pl's Opp. at 13. *Chacoty* is not a D.C. Circuit decision and is therefore not "controlling." *Chacoty* has no more persuasive

authority than the Fifth Circuit's *Hinojosa* decision, and Defendant properly drew this Court's attention to both decisions in its Combined Motion and demonstrated why this Court should adopt the reasoning in *Hinojosa*.

Plaintiff (like the appellant in *Hinojosa* and the Court in *Chacoty*) relies heavily on the Supreme Court's decision in *Rusk v. Cort*, 369 U.S. 367 (1962), which he construes as broadly holding that the process set forth in Sections 1503(b) and (c) does not provide an adequate remedy for any person residing abroad. Pl's Opp. at 15.  But that is not what the Supreme Court held in *Cort.*  It framed the question before it far more narrowly, explaining that,

> precisely stated, the question in this case is whether, despite the liberal provisions of the Administrative Procedure Act, Congress intended that a native of this country living abroad must travel thousands of miles, be arrested, and go to jail in order to attack an administrative finding that he is not a citizen of the United States.

*Cort*, 369 U.S. at 375.  The Court concluded that the circumstances of Cort's case—in which Cort sought to challenge the constitutionality of the statutory provision by which his natural-born citizenship had been revoked, and where returning to the United States would subject him to arrest and criminal penalties in light of pending charges—did not implicate the congressional purpose of Section 1503.  That reasoning does not compel a similar result here.  Unlike Cort, Baby M. has a path to judicial review under Section 1503 that would not subject her to arrest and prosecution on pending criminal charges, a point which Plaintiff does not appear to dispute.  Further, Cort's entitlement to U.S. citizenship was never in question, and his suit sought to challenge the revocation of his birthright citizenship on the ground that the applicable statute was unconstitutional.  Here, by contrast, Baby M presents exactly the kind of factual questions concerning her status as a citizen that are appropriately adjudicated through the process set forth for that purpose in Section 1503(b) and (c). *See Hinojosa*, 896 F.3d at 313 (distinguishing the plaintiff in *Cort*, "whose claim and circumstance § 1503 was not specifically intended to address").

Further, as Defendant has previously argued, *Cort* did not even address whether Sections 1503(b) and (c) present an "adequate remedy," only whether that section contains an "exclusive remedy."  Def's Mem. at 28.  *Cort* is therefore not directly applicable to the analysis under Section 704, and Plaintiff's heavy reliance on it is misplaced.  *See Hinojosa*, 896 F.3d at 313 (noting that "the *Rusk* Court never explicitly discusses the adequacy requirement of the APA" and that "the Supreme Court significantly developed and expanded the adequacy requirement" after *Rusk*, leaving it "unclear whether and to what extent *Rusk* is or remains an instructive account of the adequacy requirement").

Moreover, construing Sections 1503(b) and (c) as broadly as Plaintiff urges the Court to construe it would effectively nullify Congress's decision to establish two distinct processes depending on whether a person is within the United States or outside the United States.  Section 1503(a) provides for immediate judicial review of a claimed denial of a citizenship right, but only for persons "within the United States."  8 U.S.C. § 1503(a).  Sections 1503(b) and (c) establish a separate and distinct process for persons asserting such a claim who are "not within the United States." 8 U.S.C. § 1503(b).  If Congress intended for persons outside the United States to be able to bypass the provisions at Sections 1503(b) and (c) by filing an action under the APA, as Plaintiff seeks to do on behalf of Baby M., then the limitation of Section 1503(a) confining the availability of declaratory-judgment actions to those present in the United States would lack any significance. The Court should reject Plaintiff's argument for the same reason.

### B.   The Court's prior ruling would be inconsistent with a finding that the Department of State acted arbitrarily or capriciously

In the alternative, Defendant has argued that Plaintiff's APA claim should be dismissed, or else summary judgment should be granted to Defendant on this claim, because the Court's previous decision forecloses any possible finding that the Department of State acted arbitrarily or

capriciously.  Def's Mem. at 29-32.  Specifically, the Court has already determined that the record before the Embassy and the Court contained numerous "inconsistencies that support the Embassy's final decision that Mr. and Ms. Sabra's submissions are insufficient proof of Baby M.'s birth, identity, and citizenship," Mem. Op. at 68-71, and that "Mr. Sabra has failed to provide sufficient documentation as proof of Baby M.'s birth, identity and citizenship, as required by the applicable statutes and regulations." Mem. Op. at 70.  This Court examined the record submitted by the Sabras and determined that there had been no "clear error of judgment" on the part of the Embassy; on the contrary, the Court found that "Mr. Sabra has failed to provide critical information, specifically Baby M.'s written medical records to substantiate Baby M.'s birth and health condition," and that "[t]he current record contains the following inconsistencies that support the Embassy's final decision that Mr. and Mrs. Sabra's submissions are insufficient proof of Baby M.'s birth, identity, and citizenship" which the Court went on to list over several pages.  Mem. Op. at 68-70.  The Court concluded that "Mr. Sabra has failed to provide sufficient documentation as proof of Baby M.'s birth, identity and citizenship, as required by the applicable statutes and regulations," Mem. Op. at 70, a holding that Defendant argues forecloses the possibility that the agency's decision to deny the applications was arbitrary and capricious.

Plaintiff spends the majority of his Opposition arguing that his APA claim should not be dismissed because "[a]t the time of the briefing leading to this Court's prior order, Plaintiff was not yet able to plead an APA claim could not have raised an APA claim."  Pl's Opp. at 16.  This is neither true nor relevant.  The Department's final agency action (denial of Plaintiff's CRBA and passport applications), occurred in October 2019, nearly five months before this Court's March 2019 order.  Plaintiff thus had ample time to amend his complaint to plead an APA claim prior to the Court's decision but expressly opted not to.  But whether Plaintiff could have pleaded an APA

claim at an earlier time in this litigation is not particularly relevant to this issue at hand.  The fact

is that Plaintiff has amended his complaint to add an APA claim now, and Defendant has urged

the Court to either dismiss that claim or else grant Defendant summary judgment based on the

undisputed material facts that were in front of this Court during the first round of summary

judgment briefing.  Def's Mem. at 29-32.  "A party may file a motion for summary judgment at

any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b)(1).

Defendant does not (as Plaintiff suggests) argue that the Court's prior order is "binding

precedent" (Pl's Opp. at 16), rather Defendant argues that the Court's previous opinion would be

wholly *inconsistent* with any holding that the agency acted arbitrarily or capriciously.  Def's Mem.

at 29-32.  Plaintiff does not even attempted in his Opposition to argue how the Court could now

determine that there was no "rational connection between the facts found," during Baby M.'s

application process and the ultimate "choice made" to deny Baby M.'s applications.  Nor can he

in light of the Court's prior finding—which was based on the same records that would form the

basis of the administrative record for Plaintiff's APA claim—that there had been no "clear error

of judgment" on the part of the Embassy and that Plaintiff "failed to provide sufficient

documentation as proof of Baby M.'s birth, identity and citizenship, as required by the applicable

statutes and regulations," Mem. Op. at 68-70.  Thus, the Court can and should grant summary

judgment to Defendant on Plaintiff's APA claim based on the same undisputed material facts upon

which the Court relied in issuing its previous order.

## II.  The Court Should Reconsider its Determination that Plaintiff Met His Initial Burden on his RFRA Claim

Defendant argued in his Combined Motion that the Court should reconsider its

determination that Plaintiff met his initial burden on his RFRA claim because the Department's

conduct did not impose a substantial burden on Plaintiff's religious exercise where the Department

merely required Plaintiff to provide *any* evidence of the parent-child relationship without any pressure on the Plaintiff to change their behavior in violation of their religion.  Def's Mem. at 32-34.

As a threshold matter, Plaintiff argues in his opposition that Defendant fails to specify its basis for seeking reconsideration.  Pl's Opp. at 18.  Defendant did specify the grounds for his reconsideration motion, however, noting that "[w]hile the Court correctly found that Vice-Consul Woda suggested ways to establish Baby M.'s parentage that included a DNA test or photographs of Ms. Sabra's pregnancy, it incorrectly construed these two suggestions as requirements."  Def's Mem. at 32.  The grounds specified by Defendant squarely fit within "errors not of reasoning but of apprehension" for which reconsideration is appropriate under the "as justice requires" standard of Federal Rule of Civil Procedure ("Rule") 54(b), as understood by courts in this Circuit. *See Cobell v. Norton,* 224 F.R.D. 266, 272 (D.D.C. 2004).

Plaintiff next argues that the Court's prior opinion "reveals that the Court carefully considered all of the evidence brought before it," with respect to Plaintiff's burden to show a substantial burden on his religion.  Pl's Opp. at 18.  Plaintiff specifically points to the portion of the Court's opinion discussing Plaintiff's allegation that Ms. Sabra "was informed by Vice Consul Woda that 'we would need to submit to a DNA test to prove [BabyM] is [her] daughter.'"  Pl's Opp. at 19.  But even if one were to view this allegation in the light most favorable to Plaintiff, and assume that she misunderstood Defendant's *suggestion* that she could provide DNA evidence to be a *requirement*, this misunderstanding was undisputedly dispelled by Defendant's counsel's numerous representations in open Court during the course of this litigation *while Plaintiff's applications were still pending with the Department*, that the Department would accept *any*

*evidence* of parentage, to include, but not limited to DNA or photographic evidence. *See* Def's Mem. at 32, 33 n5 (citing 8/16/19 and 9/4/19 Hearing Trs.).

Plaintiff proceeds to argue that Defendant's argument that the Court should consider whether the *request* for any evidence imposes a substantial burden on Plaintiff's religious beliefs, and not whether DNA or photographic evidence specifically would burden the Sabras' religious practice is "a distinction with no practical difference." Pl's Opp. at 19. But Defendant has cited ample case law in its Combined Motion from inside and outside this Circuit for the proposition that Plaintiff cannot be said to face "substantial pressure" to provide DNA or photographic evidence if the government was willing to receive alternative evidence. Def's Mem. at 33-34. So the distinction indeed makes a difference. The fact that the Sabras did offer some additional evidence that was ultimately deemed either not credible or otherwise insufficient by the Embassy (Pl's Opp. at 19-20) is not relevant to the question of whether Defendant's conduct in offering to accept *any evidence* imposed anything more than a *de minimis* burden on Plaintiffs' religious beliefs. Because the Department offered alternative means by which Plaintiff could have established parentage, including declarations from other individuals, without limiting the variety of evidence that would have been taken into consideration, the Department's conduct did not impose a substantial burden on Plaintiff's religious exercise and the Court should reconsider its prior determination that Plaintiff met his initial burden on his RFRA claim.

## III.   Defendant is Entitled to Summary Judgment on Plaintiff's RFRA Claim Because the Department's Request for Additional Evidence Furthered Compelling Government Interests and Did so Through the Least Restrictive Means

Defendant has argued in the alternative that even if the Court denies Defendant's request for reconsideration and maintains its finding that the Department has imposed a substantial burden on Plaintiff's religious beliefs, Defendant is still entitled to summary judgment in its favor regarding Plaintiff's RFRA claim. Def's Mem. at 34-42. This is because the Department's CRBA

and passport application processes serve compelling governmental interests in: (1) ensuring that U.S. citizenship documentation is obtained only by those entitled to it, and (2) defending against international child abduction, illegal adoption, and child trafficking efforts. *Id.* The Department's processes are the least restrictive means of accomplishing those interests—it requested any evidence that the Sabra's could provide to establish their relationship with Baby M. Indeed, there is no less restrictive means possible. *Id.* The Court should therefore grant Defendant's Combined Motion and enter judgment for Defendant. *Id.*

At the outset, Plaintiff's Statement of Genuine Issues in Response to Defendant's Statement of Material Facts as to Which There is no Genuine Dispute fails in almost all respects to comply with Local Civil Rule ("Local Rule") 7(h)(1), which requires that an opposition to a summary judgment motion be accompanied by "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." *See also* Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the *mere allegations or denials* of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial*.") (emphasis added). In response to 84 of 102 paragraphs[2] of Defendant's

---

[2]    Plaintiff has arguably cited some evidence in support of his responses to the following 18 paragraphs: Paragraph 13 (denies in part, citing to the Foreign Affairs Manual ("FAM")); Paragraph 15 (denies in part, citing to various docket entries); Paragraph 20 (denies in part, citing to a docket entry, Woda's declaration, and Sabra's declaration); Paragraph 21 (denies in part, citing to a docket entry, a physician's discredited declaration, and Sabra's declaration); Paragraph 22 (denies in part, citing to the FAM); Paragraph 23 (denies in part, citing to the FAM); Paragraph 25 (denies in part, citing to a docket entry and Sabra's declaration); Paragraph 29 (denies in part, citing to a docket entry); Paragraph 30 (denies in part, citing to a docket entry and the FAM); Paragraph 41 (denies in part citing to Sabra's declaration); Paragraph 45 (denies in part, citing to Sabra's declaration); Paragraph 47 (denies in full, citing 'above,' Woda's declaration, and Sabra's declaration); Paragraph 48 (denies in full, citing same); Paragraph 49 (denies in part, citing same);

Statement of Material Facts, Plaintiff has admitted or rested on mere allegations or denials, supported by no evidence or specific facts.  *See, e.g.*, Plaintiff's Response to Paragraph 11 ("Admit these items were provided. Deny to the extent that it implies no other documents were available or offered, or have since been provided"); Response to Paragraph 4 ("Admit that Ms. Sabra was advised to bring documentation; deny to the extent this implies she was instructed to bring any specific documents").

Given Plaintiff's failure to refute any of the specific factual assertions Defendant has proffered in 84 paragraphs, these paragraphs of Defendant's statement of material facts should be treated as conceded, as permitted by Local Rule 7(h) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").  *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) ("[Rule 56(e)] also allows the District Court to consider [a] fact undisputed if it has not been properly supported or addressed as required by Rule 56(c).  Indeed, for the evidentiary burden that Rule 56(c) places on nonmovant plaintiffs to function, a court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part.") (internal quotations and citations omitted); *see also Twist v. Meese*, 854 F.2d 1421, 1424 (D.C. Cir. 1988); *Jackson, Finnegan, Henderson,*

---

Paragraph 57 (denies in part, citing a docket entry); Paragraph 58 (denies in part citing the FAM); Paragraph 80 (denies in part, citing a docket entry); Paragraph 90, (denies in full, citing same).

To the extent, however, that Plaintiff cites as evidence the declaration of the neighbor/physician, this Court has already ruled that his declaration "fails to comply with 28 U.S.C. § 1746."  Mem. Op. at 64 n11.  This declaration is therefore not admissible evidence.

*Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996); *Trawick v. Hantman*, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

Moving to the merits of Plaintiff's legal arguments, it is notable that Plaintiff "does not dispute Defendant's argument that the 'United States has a compelling interest in ensuring that U.S. citizenship documentation is obtained only by those entitled to it and in protecting the passport and CRBA application processes against fraud.'"  Pl's Opp. at 20.  Plaintiff therefore focuses the entirety of his opposition on the "least restrictive means" prong.

Plaintiff's "least restrictive means" argument focuses on the evidence presented with Baby M.'s applications and once again attempts to mischaracterize as "requirements" the Department's statements regarding what evidence could be submitted by Plaintiff in support of the applications.  Pl's Opp. at 21-22.  This misses the mark and is really just an argument that the Department should have accepted the evidence Plaintiff presented with Baby M.'s applications notwithstanding the myriad concerns the Department and this very Court have identified regarding said evidence.  Moreover, it fails to consider that Department regulations place the burden of proof on Plaintiff to prove Baby M's citizenship and identity and provide that the Department can ask for additional evidence if necessary.  *See* 22 C.F.R. §§ 51.23, 51.40, 51.45.  Plaintiff cannot avoid the fact that this Court has already decided in its prior order that the evidence Plaintiff submitted in support of Baby M's applications was insufficient.  Mem. Op. at 68-71.  Nor can Plaintiff avoid the fact that the Court already decided that the Department was justified when it ultimately denied Plaintiff's applications based on the totality of the evidence submitted by Plaintiff.  *Supra* at 6-8.  Because the Court has recognized the insufficiency of Plaintiffs' submitted evidence, it necessarily follows that the Department's request for any additional evidence was not only proper, but the least

restrictive means of accomplishing the Department's uncontested compelling governmental interests.

The Department's regulations provide that the Department can ask for additional evidence if necessary.  The Department has compelling governmental interests in (1) ensuring that U.S. citizenship documentation is obtained only by those entitled to it, and (2) defending against international child abduction, illegal adoption, and child trafficking efforts.  When presented with insufficient evidence of Baby M.'s citizenship and identity, requesting any additional evidence from Plaintiff—the party bearing the burden of proof to prove these things—is the least restrictive means the Department has of accomplishing those uncontested compelling governmental interests. Further, at no point did the Department require the Sabras to submit to DNA testing or to provide photos of Ms. Sabra pregnant, nor did it condition receipt of a government benefit on such submission.  *See supra* at 9-10.  As such, the Department's request for additional evidence, which could include medical records, declarations, photos, DNA, or any other evidence, was the least restrictive means of accomplishing its compelling interests and summary judgment should be granted in Defendant's favor.

*       *       *

14

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's

Combined Motion and enter judgment for Defendant.

Dated:  December 11, 2020

                                        Respectfully submitted,

                                        MICHAEL R. SHERWIN
                                        Acting United States Attorney

                                        DANIEL F. VAN HORN
                                        D.C. Bar #924092
                                        Chief, Civil Division

                                        By: *Diana V. Valdivia*
                                        DIANA V. VALDIVIA
                                        D.C. Bar # 1006628
                                        Assistant United States Attorney
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        T: (202) 252-2545
                                        diana.valdivia@usdoj.gov

                                        *Counsel for Defendant*